Richard M. Scrushy has filed a petition for a writ of prohibition or, in the alternative, for a writ of mandamus challenging the circuit court's order requiring him to dismiss a pending arbitration proceeding that he had initiated. We grant the petition and issue the writ of mandamus.
 I. Factual Background and Procedural History
Currently pending in the Jefferson Circuit Court isRichard M. Scrushy v. HealthSouth Corporation, No. CV-05-7364. Scrushy, the petitioner here, filed this breach-of-contract action on December 9, 2005, alleging that HealthSouth improperly terminated his "employment" and seeking termination benefits pursuant to a September 17, 2002, employment contract between Scrushy and HealthSouth. Scrushy was both the Chief Executive Officer ("CEO") and the Chairman of the Board of Directors of HealthSouth until March 2003.
On April 14, 1994, Scrushy and Health-South entered into an indemnity agreement that recites that "[HealthSouth] must provide [Scrushy] with adequate protection through insurance and indemnification against inordinate risks of claims and actions against [him] arising out of [his] service to and activities on behalf of [HealthSouth]." The indemnity agreement contains the following arbitration provision:
 "[T]he Indemnitee [Scrushy] shall be entitled to a final adjudication in an appropriate court of the State of Delaware or any other court of competent jurisdiction of his entitlement to such indemnification or advance. Alternatively, the Indemnitee may, at his option, seek an award in arbitration to be conducted by a single arbitrator pursuant to the rules of the American Arbitration Association, such award to be made within 60 days following the filing of the demand for arbitration.
[HealthSouth] shall not oppose the Indemnitee's right to seek any such adjudication or award in arbitration or any other claim. . . . [HealthSouth] further agrees to stipulate in such court or before any such arbitrator that [HealthSouth] is bound
by all the provisions of this Agreement and is precluded from making any assertions to the contrary."
(Emphasis added.)
On December 19, 2005, Scrushy filed a demand for arbitration with the American Arbitration Association ("AAA") pursuant to the indemnity agreement in which he sought reimbursement for his expenses associated with mounting a successful defense in an asset-freeze proceeding and in a criminal proceeding, both of which arose from his employment as CEO and Chairman of the Board of HealthSouth. According to Scrushy, paragraph 5 of the indemnity agreement expressly and absolutely entitles him to indemnification and reimbursement for those expenses. Scrushy thus contends that there is no substantive defense to his claim and that the only defense possible is one addressing the reasonableness of the incurred expenses. On the other hand, HealthSouth points to paragraph 2(b) of the indemnity agreement, which provides that no indemnification *Page 292 
would be paid "on account of conduct of the Indemnitee which is finally adjudged by a court of competent jurisdiction to have been knowingly fraudulent or to constitute willful misconduct."
Scrushy's action in the circuit court does not seek relief based upon the indemnity agreement. Nevertheless, on December 28, 2005, HealthSouth filed a counterclaim in the Jefferson Circuit Court action requesting the circuit court to terminate Scrushy's arbitration proceeding and to order him to refile the claims asserted in the arbitration proceeding in the breach-of-contract/termination-benefits case pending in the circuit court "for the sake of efficiency and convenience" and seeking to have the circuit court rule on the validity of HealthSouth's defenses to the arbitration provision in the indemnity agreement. HealthSouth also moved to stay and enjoin Scrushy's arbitration proceeding. Health-South claimed that it had "defenses" to that proceeding that gave the circuit court the authority to supersede the arbitration proceeding. HealthSouth also claimed that Scrushy had waived the right to arbitration (1) by filing requests for advancement of litigation costs in two successfully resolved proceedings — an action in Delaware state court and an insurance proceeding in federal court (not brought under the indemnity agreement), and (2) by breaching his fiduciary duty to HealthSouth.
On January 4, 2006, after an AAA scheduling conference in which the AAA set deadlines and issued administrative directives to the parties, the circuit court held a hearing on HealthSouth's motion to stay and enjoin the arbitration proceeding. At the conclusion of the hearing, the circuit court suggested that the parties attempt to reach what the court referred to as a "standstill agreement" allowing a 16-day extension of the 60-day contractual arbitration period so that the court could consider a jurisdictional issue "without mooting HealthSouth's motion." The parties, through counsel, then apparently reached such an agreement. On January 5, the AAA issued a notice indicating that HealthSouth had not filed counterclaims or objected to administrative directives in the arbitration proceeding regarding the place of arbitration and the selection of an arbitrator. Thereafter, on January 9, the circuit court entered an order that stated, in pertinent part:
 "The Court is informed that the parties have a dispute concerning the agreement that was reached in open court [on January 4].
 "By filing the Complaint in this action, Scrushy has subjected himself to the personal jurisdiction of this Court. In its Answer and Counterclaim, HealthSouth has not contested the jurisdiction of this Court. Therefore, the Court determines that it has personal jurisdiction over the parties, and the corresponding authority to enter such orders at law or equity as it deems necessary to aid and protect its jurisdiction. This Court believes that it is in the interest of equity, fairness to the parties, and the orderly administration of justice that the parties abide by the agreement reached in open court on January 4, 2006.
 "Therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:
 "The parties are ordered to abide by the agreement reached before the Court on January 4, 2006; namely, that for a period of 16 days, from January 4 to January 20, 2006, the parties have entered into a standstill with respect to the arbitration proceeding before the American Arbitration Association and will take no action in that proceeding. In order to carry out the agreement, the parties have agreed that they will direct the *Page 293 
American Arbitration Association to cease any and all action in the arbitration proceeding, and further that such 16 days will not be included in any time period calculation in the event this matter eventually proceeds in arbitration."
Scrushy contends that the temporary stay has caused, and that an indefinite stay will cause, him irreparable and continuing harm. Further, says Scrushy, although the temporary stay expired on January 20, HealthSouth has not filed counterclaims or objections in the arbitration proceeding.
On February 1, the circuit court entered an order regarding HealthSouth's motion to stay, noting that "HEALTHSOUTH is contractually estopped from contesting SCRUSHYS right to seek arbitration regarding these indemnification claims" and quoting that portion of the indemnity agreement that provided, "The Company shall not oppose the Indemnitee's right to seek any such adjudication or award in arbitration or any other claim." The circuit court noted that HealthSouth had presented "substantial evidence" in support of its defenses to arbitration based upon waiver by litigation. However, the circuit court expressly disavowed having made any decision on that issue. Nevertheless, invoking its "inherent power and authority to manage the litigation pending herein" and its commitment to cooperate with the federal court involved in related litigation, and citing the need to manage pretrial discovery in a way that is "fair and equitable to all parties," the circuit court concluded that HealthSouth was "entitled to pursue and establish any defenses that it may have concerning the merits of SCRUSHY'S claim for indemnification" without the arbitration proceeding coming to a conclusion. Consequently, the circuit court stayed the arbitration "until such time as this Court determines that the arbitration may recommence." The circuit court further ordered Scrushy "to terminate the arbitration and withdraw his demand for arbitration, all without prejudice to his right to commence arbitration on further order of this Court." Finally, the circuit court granted Scrushy the right to petition it to lift the stay "after pretrial discovery has occurred so that arbitration is appropriate."
 II. Standard of Review "`Mandamus is an extraordinary remedy and will be granted only where there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'
 "Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810, 813 (Ala. 2003) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991)). Mandamus will lie to direct a trial court to vacate a void judgment or order. Ex parte Chamblee, 899 So.2d 244, 249 (Ala. 2004).
 "Like mandamus, prohibition is an extraordinary writ, 'and will not issue unless there is no other adequate remedy.' Ex parte K.S.G., 645 So.2d 297, 299
(Ala.Civ.App. 1992) (citing Ex parte Strickland, 401 So.2d 33 (Ala. 1981)). 'Prohibition is proper for the prevention of a usurpation or abuse of power where a court undertakes to act in a manner in which it does not properly have jurisdiction.' Ex parte K.S.G., 645 So.2d at 299. A writ of prohibition will issue '[o]nly if the pleadings show on their face that the lower court does not have jurisdiction.' Ex parte Perry County Bd. of Educ, 278 Ala. 646, 651, 180 So.2d 246, 250
(1965). 'In such instances, the act of the usurping court is wholly void, and will not support an appeal.' Id." *Page 294 
Ex parte Sealy, L.L.C., 904 So.2d 1230, 1232-33
(Ala. 2004). We conclude that under the facts of this case a writ of mandamus is the appropriate remedy by which to order a vacatur of the circuit court's void order. Because we have no basis to conclude that the circuit court will not comply with our mandate, we decline to issue the alternative writ of prohibition.
 III. Analysis
Scrushy's petition for the writ of prohibition or, in the alternative, for the writ of mandamus relies upon the strong policy in favor of arbitration, citing Moses H. ConeMemorial Hospital v. Mercury Construction Corp.,460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). While Scrushy does not specifically invoke the Federal Arbitration Act,9 U.S.C. §§ 1 et seq. ("the FAA"), the reference to MosesH. Cone, which construes the FAA, suffices for our purposes to bring into play the implications of the FAA. As we very recently noted in Ocwen Loan Servicing, LLC v.Washington, 939 So.2d 6, 14 (Ala. 2006):
 "In Moses H. Cone Memorial Hospital, supra, the United States Supreme Court recognized a strong federal policy favoring arbitration:
 "`The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'
 "460 U.S. at 24-25 (emphasis added; footnote omitted)."
For purposes of the present proceeding, we focus upon the strong federal policy relating to construction of the contract language itself. First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920,131 L.Ed.2d 985 (1995).
As previously noted, the circuit court did not pass on the question of waiver by litigation, concluding instead that HealthSouth was "contractually estopped" from arguing that Scrushy waived the right to arbitrate his indemnity claims. The circuit court relied upon that provision of the indemnity agreement stating, "The Company shall not oppose the Indemnitee's right to seek any such adjudication or award in arbitration or any other claim." The circuit court concluded that Health-South was therefore estopped from contesting Scrushy's right to seek indemnity in arbitration. In its response to Scrushy's petition, HealthSouth does not offer any argument as to the invalidity of that conclusion. Based on the United States Supreme Court's holding in Moses H. Cone, requiring that any doubts either as to the construction of the language of a contract or as to claims of waiver be resolved in favor of arbitration, we cannot affirm the circuit court's stay of the arbitration proceeding based on a rejection of the circuit court's finding of estoppel, assuming that by doing so we would also find that Scrushy waived his right to arbitration by substantially invoking the litigation process to the detriment of HealthSouth.
The arbitration provision appears in an indemnity agreement negotiated by two highly sophisticated business parties. One of the attributes of arbitration is the availability of only as much discovery as the arbitrator sees fit to permit. See H S Homes, L.L.C v.McDonald, 910 So.2d 79, 85 (Ala. 2004). Nevertheless, the circuit court has found that resolution of the issues made the basis of the arbitration proceeding without discovery is inconsistent with its view of the orderly administration of the case before it. In so doing, the circuit court has impermissibly rewritten *Page 295 
the indemnity agreement between the parties. The arbitrator is the appropriate entity to decide the issues of how much discovery is appropriate and the interrelationship between paragraph 2(b) and paragraph 5 of the indemnity agreement. That the requirement of paragraph 10 of the indemnity agreement calling for an award to be made within 60 days following the filing of the demand for arbitration may be impractical under the circumstances here presented is no occasion to rewrite the indemnity agreement to suit the present pleasure of one of the parties. Such activity flouts settled principles of Alabama contract law. See, e.g., Mutual Sav. Life Ins. Co. v.James River Corp. of Virginia, 716 So.2d 1172, 1178
(Ala. 1998) ("A broader interpretation of the transaction would effectively rewrite the contract to give the investors more than they bargained for in an arm's-length transaction between sophisticated parties."); and Ex parte AssociatesCommercial Corp., 423 So.2d 195, 200 (Ala. 1982) ("The pivotal rule that lies at the core of this case is that which says no court can rewrite the terms of a plain and unambiguous contract."). We cannot apply unique rules of contract law applicable only to arbitration agreements. Doctor'sAssocs., Inc. v. Casarotto, 517 U.S. 681, 687,116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).
HealthSouth urges this Court to uphold the circuit court's order based upon Art. VI, §§ 142(b) of the AlabamaConstitution of 1901, which provides that a circuit court "shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers." HealthSouth cites no authority to support the availability of state law to overcome the provisions of the FAA. In fact, we cannot permit state-law-based concepts of inconvenience or inconsistency with preferred standards for the administration of justice to countenance refusal to enforce the provisions of an agreement to arbitrate without running afoul of 9 U.S.C. §§ 2 (written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). As this Court stated inLeeman v. Cook's Pest Control, Inc., 902 So.2d 641,644-45 (Ala. 2004):
 "General contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement without contravening the FAA. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753
(1995) ('States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract. "`(quoting 9 U.S.C. §§ 2)). However, this Court is precluded 'from singling out arbitration provisions for suspect status,' and it must instead place such provisions `"upon the same footing as other contracts."' Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (internal quotation marks omitted in Casarotto ))."
The "suspect status" of the arbitration agreement in this case can be the only justification for the circuit court's revision of the terms of the indemnity agreement, inconsistent with the aforementioned general principles of Alabama contract law, to accommodate the current interests of HealthSouth.
This Court faced the opposite of the factual scenario presented in this case in Ex parte Tony's Towing,Inc., 825 So.2d 96 (Ala. 2002), in which all defendants except Tony's Towing moved to compel arbitration. The plaintiff and the other defendants *Page 296 
then asked the trial court to compel Tony's Towing to participate in arbitration with them. This Court's previous cases had addressed the intertwining of claims in situations where a nonsignatory to an arbitration agreement sought arbitration over the objection of a signatory. In Tony'sTowing, signatories to the arbitration agreement sought arbitration over the objection of a nonsignatory. Because Tony's Towing had not contracted to arbitrate, we concluded that it could not be compelled to arbitrate its claims, despite the fact that litigation and arbitration would proceed simultaneously. We concluded that although "[t]he trial court exhibited laudable concern for judicial economy and for avoiding inconsistent verdicts[,] . . . . we [could not] address those concerns without rewriting or, indeed, creating a contract calling for arbitration where none exists."825 So.2d at 99.
In the case before us, despite the circuit court's commendable efforts to coordinate this litigation with other cases pending before it and in the federal court, as well as its efforts to manage pretrial discovery, because any attempt to deter the arbitration process contemplated by the indemnity agreement rewrites that agreement, the circuit court's order staying the arbitration proceeding and directing Scrushy to terminate the arbitration proceeding is void and must be vacated. When presented with similar situations, the United States Supreme Court has also concluded that concepts of judicial economy are secondary to the strong federal policy favoring arbitration. In Dean Witter Reynolds, Inc. v.Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158
(1985), the Supreme Court stated:
 "[T]he Sixth, Seventh, and Eighth Circuits have held that the Arbitration Act divests the district courts of any discretion regarding arbitration in cases containing both arbitrable and nonarbitrable claims, and instead requires that the courts compel arbitration of arbitrable claims, when asked to do so. These courts conclude that the Act, both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and 'not substitute [its] own views of economy and efficiency' for those of Congress. Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 646 (C.A.7 1981).
 "We agree with these . . . courts that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."
(Footnote omitted.) See also Moses H. Cone,460 U.S. at 20, 103 S.Ct. 927 (The FAA "requires
piecemeal resolution when necessary to give effect to an arbitration agreement." (footnote omitted)).
 IV. Conclusion
Although we commend the circuit court for its laudable concerns as to the efficient management of complex litigation, for the reasons previously stated we grant Scrushy's petition for a writ of mandamus asking this Court to vacate the trial court's order of February 1, 2006.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur. *Page 297